# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. *05-30283-MAP*

| | |
|---|---|
| MONTAGNO CONSTRUCTION, INC. ) | |
| ) | |
| **Plaintiff** ) | **VERIFIED COMPLAINT** |
| ) | |
| ) | |
| ACTION AIR, INC. ) | |
| ) | |
| **Defendant** ) | |

## THE PARTIES

1.      Plaintiff, Montagno Construction, Inc. ("Montagno"), is a Connecticut corporation with a place of business at 75 Progress Lane, Waterbury, Connecticut 06705.

2.      Defendant, Action Air, Inc. ("Action Air") is, upon information and belief, a Massachusetts corporation with a place of business at 111 Industrial Lane, Agawam, Massachusetts 01001.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) in that there is complete diversity of citizenship of the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4.      The Court has personal jurisdiction over the defendant in that its principal place of business in this judicial district.

5.      Venue is proper in this Court because the defendant's business in this judicial district.

## STATEMENT OF FACTS

6.      On or about April 30, 2003, Montagno entered into a contract (the "General Contract") with Liberty Community Services, Inc. (the "Owner") pursuant to which Montagno was to provide general contractor services for a project known as "Safe Haven" (the "Project") located in New Haven, Connecticut.

7.      The General Contract provided that Montagno would be paid a stipulated sum for the work that it agreed to perform.

8.      The General Contract incorporated various documents prepared by the Project's architect, including General Conditions, Special Conditions, Plans, Specifications and Addenda. Details for heating, ventilation and air conditioning ("HVAC") work to be performed as part of the Project were outlined in the general contract documents

9.      Montagno entered into a subcontract with Action Air dated September 11, 2003 (the "Subcontract"), pursuant to which Action Air agreed to perform all HVAC work as outlined in section 15500 of the Specifications and to furnish all "labor, services, materials, plant, equipment, tools, appliances and all other things necessary to complete" the HVAC work "in strict accordance with the Plans, Specifications, General Conditions, Special Conditions and Addenda ... ."

10.      A true and accurate copy of the Subcontract is attached hereto as Exhibit A.

11.      Article III of the Subcontract required Action Air to "execute the work in accordance with the requirements of the project schedule including any revisions thereto."

12.      Pursuant to Article XI of the Subcontract the failure of Action Air to provide sufficient workers or materials, or to prosecute the work with promptness and diligence in any respect constitutes a default under the Subcontract.

13.     In the event of such default, Montagno was entitled to provide its own manpower, or hire replacement contractors, to complete the work and charge Action Air for any increased cost or expenses.

14.     Article XI entitles Montagno to recover "all losses, damages, costs and expenses, including legal fees and disbursements" incurred as a result of a default by Action Air.

15.     Action Air commenced work under the Subcontract in the last quarter of 2003.

16.     Action Air submitted payment applications for work performed pursuant to the Subcontract and had been paid a total of $179,746.00 as of July 9, 2004.

17.     On or about November 11, 2004, Montagno had a meeting with all of its subcontractors to discuss an acceleration of the job schedule (the "Meeting").

18.     Paul Chevalier ("Mr. Chevalier"), the President of Action Air, attended the Meeting.

19.     After the Meeting, Montagno's President, Kurt Montagno ("Mr. Montagno"), met individually with Mr. Chevalier.

20.     Mr. Chevalier assured Mr. Montagno that Action Air was ready to supply the necessary manpower, materials and supervision to complete the remainder of the work required by the Subcontract in accordance with the revised schedule.

21.     After November 11, 2004, Action Air failed to deliver to the site the necessary manpower and resources to complete the HVAC work required by the Subcontract.

22.     On December 3, 2004, Montagno notified Action Air in writing that it intended to exercise its rights under Article XI of the Subcontract to provide supplemental manpower and replacement contractors to complete the work required by the Subcontract and that it would look to Action Air for any excess costs incurred as a result.

23.     A true and accurate copy of the December 3, 2004 letter is attached hereto as Exhibit B.

24.     Action Air did not to respond to the December 3, 2004 letter.

25.     On December 15, 2004, Montagno again wrote and informed Action Air that it had started to exercise its rights under Article XI of the Subcontract and would continue to do so to complete the work.

26.     A true and accurate copy of the December 15, 2004 letter is attached hereto as Exhibit C.

27.     Action Air did not respond to the December 15, 2004 letter.

28.     Due to Action Air's failure to perform the work required by the Subcontract, Montagno was forced to hire substitute contractors and use its own manpower to do the work at a cost of $207,074.85 more than the Subcontract amount, including change orders.

29.     Montagno generated change orders describing work performed by replacements that should have been performed by Action Air.

30.     Each change order set forth the cost associated with the replacement and the impact on the Action Air Subcontract amount.

31.     Each change order was forwarded to Action Air.

32.     True and accurate copies of these change orders are attached hereto as Exhibit D.

33.     The change orders sent to Action Air reflected the excess costs being incurred by Montagno to complete the work that Action Air had contracted to perform.

## COUNT I (BREACH OF CONTRACT)

34.     Montagno incorporates by reference the allegations contained in paragraphs 1 through 33 of the complaint as if set forth herein.

35.     Action Air breached the Subcontract by failing to complete the work required

thereby.

36.     Montagno has sustained damages as a result of Action Air's breach of contract.

**WHEREFORE**, Montagno respectfully requests that this Court:

a.      Enter judgment in favor of the plaintiff in the amount of $207,074.85 plus interest;

b.      Award the plaintiff its costs and attorneys fees; and

c.      Award the plaintiff such other relief as this Court determines is proper and just.

Respectfully submitted,
Montagno Construction, Inc.
By its Attorneys,

Daniel J. Finnegan, BBO# 561347
Bulkley, Richardson & Gelinas
1500 Main Street, Suite 2700
Springfield, MA 01115
T: (413) 781-2820
Dated: December 5, 2005          F: (413) 272-6805

## VERIFICATION

I, Kurt Montagno, am the authorized agent for Montagno Construction, Inc.  Except where allegations are based upon information and belief, I have personal knowledge of the matters set forth in the foregoing Verified Complaint or I have learned of the matters set forth in the foregoing Verified Complaint by reviewing certain documents.  The allegations contained in the Verified Complaint are true to the best of my present knowledge, information, and belief.  I certify under the penalties of perjury on behalf of Montagno Construction, Inc. that the foregoing is true and correct.  Executed this 5th day of December, 2005.

Kurt Montagno, President

#312902